UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCIA BANKS,

     Plaintiff,

vs.                                        CIVIL NO.:  05-CV-73671-DT

COMMISSIONER OF                  HON. NANCY G. EDMUNDS
SOCIAL SECURITY,                 MAG. JUDGE WALLACE CAPEL, JR.

     Defendant.
_____/

**REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

It is recommended that the Court grant Plaintiff's Motion for Summary Judgment, deny Defendant's Motion for Summary Judgment, and remand this case for further fact finding consistent with this Report.

**II.    REPORT**

This is an action for judicial review of the Defendant Commissioner's final decision denying Plaintiff's application disability insurance benefits [DIB].  Plaintiff filed her application for benefits on July 26, 2002,[1] alleging that she has been disabled and unable to work since January 22, 2002, due to carpal tunnel in both hands, dratation cup, and arthritis in her back, hands, leg, and shoulder.  (TR 46-48, 62).  The Social Security Administration [SSA] denied benefits initially on October 24, 2002.  (TR 26-30).  A de novo hearing was held on August 12, 2004, before Administrative Law Judge [ALJ] Douglas N. Jones.  (TR 299-327).  In a decision dated November 19, 2004, the ALJ found that Plaintiff

---

[1]Plaintiff's "Disability Determination and Transmittal" form reads August 21, 2002, as her filing date.  (TR 25).

was not disabled. (TR 17-24). The Appeals Council denied a request to review the decision on July 21, 2005. (TR 5-7). The Plaintiff has commenced this action for judicial review.

### A.     TESTIMONY

Plaintiff testified that she lives in Flint, Michigan in a one story home with a basement by herself. (TR 303). She stated that she has lived there since 1997. Id. She testified that she was born April 8, 1952. Id. She reported that she finished the eleventh grade and received her GED as well as a year and a half of college at the Detroit School of Business. (TR 303-04). She explained that she was in a training program at Buick, and that she took the courses at her work site. (TR 303-04).

Plaintiff testified that she is five feet and ten inches tall and weighs about two hundred and eighty-five pounds. (TR 304). She stated that she is right-handed. Id. She reported that she is currently unemployed and last worked January 22, 2002. Id. She explained that she worked at the power train plant from 1972 until she retired in March 2003. (TR 304-05). She explained that her retirement was effective in March, but she actually stopped working at the end of January 2002. (TR 305). She testified that she has not been involved in any vocational rehabilitation to try to find less strenuous work. (TR 307).

She explained that she stopped working because her hands and back were deteriorating and she could no longer perform the job. (TR 305). She stated that she has not worked at all since January 2002. Id. She stated that she did not collect unemployment when she stopped working, but she does receive worker's compensation in the amount of $644.00 per week. Id. In addition, she stated that she has total disability from General Motors [GM] and gets $2850.00 per month with her disability and pension. (TR 306). She also has BlueCross BlueShield health insurance from GM. Id.

Plaintiff stated that she was in a car accident in December 2002, when a flatbed truck hit her truck while she was trying to park. Id. She stated that she did not get any insurance benefits, but they

did pay all her medical expenses. Id. She stated that she did not receive any money for lost wages. (TR 307). She stated that, other than as previously mentioned, she does not receive any other form of income. Id.

Plaintiff stated that she has a valid driver's license that she recently renewed in 2004. Id. She stated that she drives two to four times a week. Id. She stated that she drives to her doctor's appointments every two to three months. Id. She reported that she has not been on any trips or vacations in the last two years, nor has she been out of state. Id.

Plaintiff testified that she had a hysterectomy in 1994 and three breast biopsies in 1998, 2001, and 2002, for a cancerous lump, a cyst, and a noncancerous tumor, respectively. (TR 308). She stated that the surgeon removed lymph nodes during the surgery in 2001. Id. She stated that at all the surgeries were outpatient, and she has been fine since then. Id.

Plaintiff reported that Aram Minasian is her primary care physician. (TR 309). She stated that she also sees Dr. Awerbuch every three months. Id. She stated that she has reduced her cigarette smoking to a half pack a day now. Id.

She stated that she had surgery on her right hand twice, once in 1970 and once in 1977, for carpal tunnel. Id. She stated that they operated to relieve pressure. (TR 309-10). She stated that she had another surgery in 1979. (TR 310). She stated that when she returned to work in 1979 a tendon popped in her hand above the carpal tunnel surgery site, and her hand was incapacitated for two years. Id.

Plaintiff stated that Dr. Beard has recommended surgery on both hands, but she has declined surgery because she can still use them and feels that she has had too many surgeries in the past six years. Id. Dr. Beard stated that they could only try to relieve pressure on the right hand, but they may be able to more for the left hand. Id.

Plaintiff testified that she worked for GM for thirty-one and a half years. Id. She stated that she worked twenty-eight years as a forklift truck driver. (TR 311). She explained that she drove for an hour and then loaded parts for an hour. Id. Plaintiff explained that she had to get a license to drive the forklift in the plant, and it had to be renewed every two years. (TR 314). However, she stated that she always did more than one job per day. (TR 312). She stated that the last year she worked, she washed covers for the torque converters. Id. She stated that she had to load the part, take it out of a basket, and put it on a conveyor. Id.

She explained that the conveyor was really a chute, and when the parts come out of the washer, they go through a "vision" machine that checks to see if the part is good or bad. Id. She stated that if it is bad, it is automatically sent to another line. (TR 313). She stated that part of her job was to go the other line and clear off the bad parts. Id. She stated that the parts weighed five to ten pounds each. Id. She stated that sometimes they double-checked the parts in the "vision" machine, but if they did not clear, they "would have to take them off that line and down load them in a basket to go back to be repaired." Id. She stated that the job required her to stand all day. (TR 314). She summarized her job:

> I was a truck driver. I had to go to the back, pick up my production parts, bring them back, load them onto a line, and then they were sent back to where we'd get back up on the deck and it was a basket, a metal basket tilted into you. And it was on a lift that tilted into you and then you pick - - you put - - you picked the parts out of that and loaded onto the lines to be put in for the washer for them to roll into the washer.

(TR 321). She stated that during her employment, she used her hands all the time. (TR 320). She stated that she ran 6,500 to 8,000 parts per day, eight to ten hours a day. Id. She stated that she ran the washer for eight hours and drove four hours straight. Id.

Plaintiff stated that prior to the washer job, she worked on a machine called the "Auto Saginaw." (TR 314). She stated that it was a semi-skilled job and she had to make minor repairs

manually.  Id.  She stated that they called in machine repair for any major repairs.  Id.  She stated that she did some machine set-up on her own machine.  (TR 314-15).

Plaintiff stated that her daughter does her grocery shopping for her and she might go if her back is not bothering her.  (TR 315).  She stated that she also orders groceries from Swann's.  Id.  She stated that she hired someone to do her yard work, and her granddaughters do her housework for her, including vacuuming, dusting, mopping, etc.  Id.

Plaintiff stated that she sleeps four to six hours a night, but once she wakes up she cannot fall back asleep.  (TR 315-16).  She explained that she has difficulty sleeping because of her back and night leg cramps.  (TR 316).  She stated that she takes medication that relieves her night cramps.  Id.  She explains that about four in the morning she gets shooting pains in her shoulder, left arm, and down into her hands.  Id.  She stated that it also goes into her legs, and she will try to walk the pain out or rub liniments on it, but she's up all the time.  Id.  She reported that four hours of sleep a night is good for her.  Id.  She stated that she does not nap during the day.  Id.

She testified that she can sit for about ten or fifteen minutes at a time before her back bothers her, but it also depends on what she is sitting on.  Id.  She stated that hard surfaces bother her lower back.  Id.  She stated that she can only stand ten to fifteen minutes as well.  (TR 317).  Again, she stated that if she stands too long she has pain in her lower back and it radiates into her legs.  Id.  She stated than she cannot walk more than ten minutes.  Id.  She stated that she can lift a gallon of milk, but five pounds is her lifting limit.  Id.  However, she stated that some days she cannot even lift a piece of paper if her carpal tunnel is acting up.  Id.

Plaintiff testified that stairs are difficult for her and she has to go one step at a time.  Id.  She stated that on some, days if her back is acting up, she cannot use stairs at all.  Id.  She stated that going up and down stairs bothers her back and she has to "go up them backwards."  (TR 317-18).  In

addition, she stated that she has problems bending, squatting, pushing, pulling, and reaching overhead. (TR 318). She explained that she has "a low radius in [her] left arm, which means that [she] cannot raise anything over my waist. [She] can get about to almost to the chest level, but not very much farther than that on this left arm because [she has] a damaged rotator cuff with tendonitis and carpal tunnel." Id. She stated that she cannot open lids on jars and has a hard time buttoning anything. (TR 318-19). She stated that zippers are easier, but she still has problems sometimes with them. (TR 319). Plaintiff stated that she cannot do her hair and nails and goes to the beauty shop. Id. She stated that she was wearing a wig at the hearing because doing her hair was getting problematic. Id. Plaintiff testified that she rarely writes, and can only do so for about ten minutes at a time. (TR 320).

### B.   **MEDICAL EVIDENCE**

Examination of the parties' cross-motions for summary judgment reveals that an additional recitation of the Plaintiff's medical evidence would be repetitive. The pertinent record medical evidence relied upon by this Court is fully articulated in the Analysis.[2]

### C.   **VOCATIONAL EXPERT'S TESTIMONY**

Judy Findora, a vocational expert [VE], testified at the hearing. (TR 321-26). The VE stated that her testimony would be consistent with the Dictionary of Occupational Titles [DOT]. (TR 322). The VE classified Plaintiff's work as both an assembler and forklift operator as light and unskilled. (TR 322-23). The ALJ presented a hypothetical question to the VE in which a claimant with Plaintiff's age, education, and work experience

> who was able to perform only light work that involved only occasional pushing and pulling with the non-dominant left arm and only occasional bending at the waist, occasional bending at the knees, or occasional kneeling, and no crawling, occasional climbing stairs, no climbing ladders, and only occasional - - well, it would be no overhead reaching with the non-dominant left arm and there would be frequent, but not

---

[2]Subpart E, infra, page 8.

>constant gross and fine manipulation with either hand, but no use of vibrating tools and no forceful or sustained gripping and grasping and no constant and repetitive - - constant repetitive wrist movements.

(TR 323). The VE testified that such a claimant would not be capable of Plaintiff's past work, primarily due to limitations on the hands. (TR 323-24). However, the VE testified that the following unskilled positions existed under these limitations: security guard, 10,700 positions; sales clerk, 25,000 positions; sales counter clerk, 4,800 positions; and general office worker, 11,000 positions. (TR 324). The VE stated that a need to sit and stand at will would reduce the number of security guards to 8,000. Id. Further, it would eliminate the sales positions, but the general office worker positions would remain. Id. In addition, the VE testified that the following light positions existed under the limitations: information clerk, 2,000 positions, and order clerk, 2,400 positions. Id.

Plaintiff's counsel questioned the VE. (TR 325). He asked whether the ALJ's limitations with an additional ten pound lifting limitation would place an individual solely in the sedentary category. Id. The VE stated that it would. (TR 325-26).

The ALJ asked the VE what positions would exist under the initial hypothetical with an additional sit/stand option and a ten pound lifting restriction. (TR 325). The VE stated that there would be 3,000 security positions and 4,000 general office worker positions. Id. In addition, there would be 1,300 usher positions and 4,000 personal service occupations. Id.

### D. ALJ'S CONCLUSIONS

After reviewing the testimony presented at the hearing and the medical evidence in the record, the ALJ found that

>[t]he medical evidence documents the presence of impairments best described as: bilateral carpal tunnel syndrome post status release surgery on the right (1977); status post ruptured tendon and surgical repair in the distal right forearm (1979); status post hysterectomy (1994); degenerative joint disease of the left shoulder; degenerative disc disease of the lumbar spine; osteoarthritis in both knees; right plantar fascitis and mid-

> foot osteoarthritis; bilateral DeQuervain's Syndrome; right lateral epicondylitis; thoracic outlet syndrome; asthma; and obesity.

(TR 20). Although she has an impairment that is severe within the meaning of the Regulations, she does not have an impairment or combination of impairments set forth in Appendix 1, Subpart P, Regulations No. 4. (TR 20-21, 23). The ALJ found Plaintiff's testimony not to be credible. (TR 21-22, 23). He determined that Plaintiff had the RFC

> to perform light work as defined in 20 CFR § 404.1567 that involves only occasional pushing and pulling with the non-dominant left hand, provides for the option to sit or stand at 15 minute intervals, requires only occasional bending at the waist or knees, occasional kneeling, no crawling, only occasional climbing stairs, no climbing ladders, no reaching overhead with left arm, frequent, but not constant, gross manipulation with either hand, frequent, but not constant, fine manipulation with either hand, no forceful or sustained gripping or grasping, no constant repetitive wrist movements, no use of vibrating hand tools and only occasional exposure to dust, fumes or other airborne pollutants (20 CFR § 404.1567).

(TR 24). Thus, the ALJ concluded that Plaintiff is not eligible for disability. Id.

### E.   ANALYSIS

Plaintiff advances one main claim in her Motion for Summary Judgment. Plaintiff's Motion argues that the ALJ's decision is not supported by substantial record evidence because he formed an inaccurate residual functional capacity.[3] In response, Defendant's Motion for Summary Judgment contends that the ALJ's decision is supported by substantial evidence.[4] The matter is now ready for decision.

---

[3] Plaintiff's Motion for Summary Judgment and Brief filed January 20, 2006 (hereinafter Plaintiff's Brief), at pages 6-8.

[4] Defendant's Motion for Summary Judgment and Brief filed April 12, 2006 (hereinafter Defendant's Brief), at pages 7-11.

### 1.     Standard of Review

This Court's review of the ALJ's conclusions is limited. The findings of the ALJ regarding Plaintiff's disabled status are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g) (2006). Substantial evidence means such evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971). It is more than a scintilla of evidence, but less than a preponderance of evidence. Brainard v. Sec'y of Health and Human Servs., 889 F.2d 679, 681 (6th Cir. 1989). This standard presupposes that there is a "zone of choice" within which the ALJ may make a decision without being reversed. Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994). Even if the court might arrive at a different conclusion, an administrative decision must be affirmed if it is supported by substantial evidence. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986). Finally, consideration of the whole record does not mean that the ALJ must mention or comment on each piece of evidence submitted. Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998). Applying these standards, I will analyze Plaintiff's claim.

### Discussion

The ALJ found that Plaintiff had the following RFC:

> to perform light work as defined in 20 CFR § 404.1567 that involves only occasional pushing and pulling with the non-dominant left hand, provides for the option to sit or stand at 15 minute intervals, requires only occasional bending at the waist or knees, occasional kneeling, no crawling, only occasional climbing stairs, no climbing ladders, no reaching overhead with left arm, ***frequent, but not constant, gross manipulation with either hand, frequent, but not constant, fine manipulation with either hand***, no forceful or sustained gripping or grasping, no constant repetitive wrist movements, no use of vibrating hand tools and only occasional exposure to dust, fumes or other airborne pollutants (20 CFR § 404.1567).

(TR 24) (emphasis added). Plaintiff argues that the ALJ erred in finding that "[t]he opinion of the DDS medical disability examiner expressed in a residual functional capacity assessment form dated October 11, 2002 (Exhibit 19F) does not materially differ from the residual functional capacity stated

9

above, is supported by the remainder of the record, and received substantial weight in determining the claimant's [RFC]."[5]

Plaintiff argues that although the ALJ acknowledged Dr. Friedman's September 27, 2004, consultative examination, he failed to include the limitations contained therein.[6] Dr. Friedman found that Plaintiff had the capability for only occasional gross and fine manipulation; rather than an ability to frequently do same. (TR 297). An ALJ is not required to discuss each and every piece of evidence; however, he or she "may not pick and choose the portions of a single report, relying on some and ignoring others, without offering some rationale for his decision." Young v. Comm'r of Soc. Sec., 351 F. Supp. 2d 644, 649 (E.D. Mich. 2004). Unfortunately, that is what the present ALJ did in this case. The ALJ found severe impairments regarding Plaintiff's hands, but failed to discuss Dr. Friedman's findings regarding limitations of same. (TR 20). Rather, he only mentioned Dr. Friedman's observations regarding Plaintiff's spine and left shoulder. Id.

Defendant points out that, during Dr. Friedman's examination, Plaintiff "appeared to have difficulty picking up a paperclip; however, Dr. Friedman observed that she put forth submaximal effort when performing this activity."[7] Nonetheless, Dr. Friedman concluded that Plaintiff had the following limitations: only occasional ability for gross and fine manipulation. (TR 297). The ALJ did not reject this finding, possibly because he failed to note it. Thus, the undersigned is unable to assess whether the opinion was properly rejected.

Dr. Friedman's consultative examination (TR 295-97) and the 2002 consultative examination (TR 185-92) obviously conflict on the issue of Plaintiff's ability regarding gross and fine manipulation.

---

[5]Plaintiff's Brief at page 8 (citing TR 22).

[6]Plaintiff's Brief at page 7.

[7]Defendant's Brief at pages 5-6 (citing TR 291).

The undersigned notes that Dr. Friedman had Dr. Awerbuch's findings, reports, and objective tests performed in 2003 and 2004. (TR 292). The 2002 consulting physician only had the October 2002 initial findings by Dr. Awerbuch, and did not have the opportunity, as Dr. Friedman did, to observe Plaintiff and review the additional findings by Dr. Awerbuch. (TR 187). Nonetheless, it is not within the undersigned's duty or discretion to settle the conflict between the two consultants. "Any conflict in the doctor's reports suggested by Plaintiff is not for the Court to decide. The Sixth Circuit has stated that it is not the responsibility of the Court 'to resolve conflicting evidence in the record.'" Wright v. Massanari, 321 F.3d 611, 614 (6th Cir. 2003) (citation omitted). Thus, remand is appropriate.

### 2. Remand Versus Benefits

The remaining issue is whether remand or an award of benefits is the appropriate remedy for Plaintiff. It is firmly established that under § 405(g), a court may remand for an award of benefits "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." Faucher v. Sec'y of Health & Human Servs., 17 F.3d 171, 174 (6th Cir. 1994)(citations omitted). More specifically, "[a] judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." Id. (citing Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985)).

The ALJ failed to acknowledge all of Dr. Friedman's findings. It is possible that the ALJ rejected these findings, but it is impossible for the undersigned to assess same because it is absent from the record. Dr. Friedman's findings are in direct conflict with the consulting physician's findings upon which the ALJ primarily relied. It is the ALJ duty to resolve same. Thus, remand for further fact finding is necessary.

## III.     CONCLUSION

For the reasons stated, I respectfully recommend that the court **GRANT** Plaintiff's Motion for Summary Judgment, **DENY** Defendant's Motion for Summary Judgment, and **REMAND** this case to the Defendant Commissioner for further fact finding consistent with this Report.

Pursuant to Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1), the parties are hereby notified that within ten days after being served with a copy of the recommendation they may serve and file specific, written objections. The parties are further informed that failure to timely file objections may constitute a waiver of any further right of appeal to the United States Court of Appeals. United States v. Walters, 638 F.2d 947, 950 (6th Cir. 1981).

In accordance with the provisions of Fed. R. Civ. P. 6(b), the court in its discretion, may enlarge the period of time in which to file objections to this report.

>                             s/Wallace Capel, Jr.
>                             **WALLACE CAPEL, JR.**
>                             **UNITED STATES MAGISTRATE JUDGE**

**Dated:**   August 17, 2006

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

**CERTIFICATE OF SERVICE**

I hereby certify that on August 17, 2006, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Janet L. Parker and Mikel E. Lupisella,

and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participant(s): Social Security Administration, Office of the Regional Counsel, 200 W. Adams Street, 30th Floor, Chicago, Illinois 60606.

                                            s/James P. Peltier
                                            United States District Court
                                            Flint, Michigan 48502
                                            810-341-7850
                                            E-mail: pete_peltier@mied.uscourts.gov